IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JOHNNY DEWEY GLASS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:09-cv-189 |
| | § | |
| CITY OF GAINESVILLE, TEXAS, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION & ORDER GRANTING PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Before the court are the following:

1. Defendant the City of Gainesville's Motion and Brief to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (de # 6);

2. Plaintiff's Response to Defendant's Motion to Dismiss (de # 8); and

3. Defendant the City of Gainesville's Reply to Plaintiff's Response to Defendant's Motion and Brief to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (de # 9).

Having considered the Motion, the responsive briefing and the relevant legal principles, the court is of the opinion that the Defendant's Motion should be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

The following facts are taken from the Plaintiff's Original Complaint. Johnny Glass, the Plaintiff in this civil action, is a former law enforcement officer who owns a seafood restaurant in Gainesville, Texas. The restaurant is an open-air facility with an outdoor patio. On weekends, the restaurant frequently hosts live music performances, and beer and wine are served. Glass alleges that, beginning in November of 2004, various organs of the city government began a years-long campaign of harassment designed to frustrate the restaurant's operations.

In November of 2004, the city's health department cited the restaurant for 34 minor violations, many of which were unjustified according to Glass. After Glass corrected the violations that did exist, the health department refused to conduct a follow-up inspection unless Glass paid an "inspection fee." When Glass refused, the health inspector showed up at Glass's restaurant threatening to post libelous notices on the premises and to shut down the restaurant.

In 2006, the city employed a new health inspector, Cynthia Talbot, with whom Glass also had a rancorous relationship. In one instance, an inspection was performed in Glass's absence. In addition, Talbot publicly released confidential information about Glass's restaurant obtained in her role as health inspector. She was not disciplined for this behavior. In 2007, it was discovered that Talbot had been forging signatures on phony inspections of Glass's restaurant. When the public became aware of these actions, she was released from the health inspector position.

In early 2006, the city's police force began issuing noise violations pursuant to a city ordinance. Glass complained to the city council about what he felt to be arbitrary enforcement of the ordinance. Glass was given a copy of the ordinance which stated a precise decibel level under which noise from the restaurant would not be in violation. Glass purchased a decibel meter so that he could accurately measure noise levels produced by the restaurant, ensuring that the noise remained below the limit. In spite of Glass's efforts at compliance, the city manager personally made a noise complaint shortly thereafter. When the police went to serve the complaint, three squad cars were used to block customers from leaving. On separate occasions, the Gainesville police made traffic stops in the restaurant parking lot and surrounding areas, disrupting Glass's business. Still on other occasions, Gainesville police officers harassed Glass by complaining of the volume of music at times when no music was playing.

In April of 2007, Glass fired a waitress, Mary Saparito. A second waitress, Lindsey Murray confronted Glass about the firing and spat on him. Glass responded by striking and restraining Murray, which prompted another employee to attack Glass. The incident was reported to the Gainesville police. Though the restaurant was busy with a number of patrons at the time of the incident, the police took statements from the three restaurant employees and other "'witnesses' designated by Murray and Saparito." (Pl's. Orig. Compl. ¶ 56.) As a result of the incident, Glass was charged with having assaulted both waitresses. He was also charged with a provision of the Texas Alcoholic Beverage Code which criminalizes a license holder's being intoxicated on his own premises. The latter charge was made in the absence of any investigation. At trial on these three charges, Glass was acquitted of the Saparito assault and Beverage Code violation by directed verdict and of the Murray assault by jury verdict. In his defense, Glass called eyewitnesses that were available to police during their investigation but who were not interviewed.

On a separate occasion, Glass ejected an unruly patron, Preston Jacoby. As with the previous incident, the Jacoby incident occurred during business hours, and a number of patrons saw the events. And as with the previous incident, the Gainesville Police Department's investigation avoided contacting these witnesses. Glass was eventually charged with assaulting Jacoby based solely on a statement given to the police by Jacoby. Glass was never contacted during the police's investigation. During trial, four eyewitnesses testified that Jacoby was the aggressor and that Glass had merely used reasonable force in removing him from the premises. None of the witnesses had been approached by Gainesville police for a statement before the trial. Glass was acquitted.

Finally, Glass was charged with another assault based on an incident that occurred in April of 2008. Glass had fired an employee, Jordan Doucet, and advised her to leave the property. Doucet

returned shortly thereafter and grabbed two handfuls of money from the cash register. Glass saw the attempted theft and was able to approach Doucet before she could leave. After Glass restrained her, Doucet dropped the money, left the building and called the Gainesville police. The police officers who responded did not take a statement from Glass. An investigator later appeared at the restaurant and argued with Glass, taking the position that Doucet was proper in taking money from the cash register because she felt that Glass owed her the money. Glass provided the police with a list of eyewitnesses, and again, the police failed to interview any of them. At the trial, Glass called several of these eyewitnesses, and each of them testified that Glass's use of force was necessary to prevent the robbery by Doucet.

Glass filed this lawsuit in April of 2009 against the City of Gainesville, alleging claims under 42 U.S.C. § 1983 for violation of his Fourth, Fifth and Fourteenth Amendment rights, under state law for intentional infliction of emotional distress and for a declaratory judgment under 28 U.S.C. § 2201. The City filed the instant Motion to Dismiss, arguing that Glass has not identified an official city policy for which liability could attach under Section 1983. The City also argues that the conduct outlined by Glass is not extreme and outrageous as is required to support a claim of intentional infliction of emotional distress under Texas law. Finally, the City argues that a declaratory judgment is unavailable because there is no actual controversy surrounding the City's enforcement of its noise ordinance.

With regard to Glass's Fifth Amendment claim, no cause of action exists because the Due Process Clause of the Fifth Amendment applies only to federal actors. The City's Motion should, therefore, be GRANTED insofar as it addresses that claim. The court finds that the Complaint adequately states the remainder of Glass's claims. Accordingly, the Motion should be DENIED

insofar as it addresses the remaining claims.

## II. LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) are disfavored and are rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). In passing on a Rule 12(b)(6) motion, a court must accept all of the plaintiff's allegations as true. *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005). A claim will survive an attack under Rule 12(b)(6) if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id*. at 563 n.8.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions;" "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level," *id*. at 555, and into the "realm of plausible liability." *Id*. at 557 n.5. Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## III. DISCUSSION & ANALYSIS

A.   Section 1983 Claims

Section 1983 provides a private right of action to those who have been deprived of a federally created right by someone acting under color of law. *See Inyo County v. Paiute-Shoshone Indians*

of the Bishop Cmty.*, 538 U.S. 701, 708 (2003). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To establish liability under Section 1983, a plaintiff must show "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

In order to prevail against a municipality such as the City of Gainesville, a plaintiff must show that the deprivation occurred in the "'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, . . . .'" *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). "*Respondeat superior* does not apply to municipalities for claims under § 1983." *Id*. A plaintiff may "prove the existence of a municipal custom by pointing to a 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id*. (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)).

   1.   *Fourth Amendment*

Glass first raises a claim that his Fourth Amendment right to be free from unreasonable seizure was violated when he was arrested on suspicion of assault on three separate occasions without a warrant . Absent a valid arrest warrant, an arrest must be supported by probable cause "to conclude that the suspect had committed or was committing an offense." *Deville*, 567 F.3d at 164 (quoting *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000)). "The facts must be known to the

officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest." *Club Retro LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). A person commits an assault in Texas if he "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE § 22.01(a)(3) (Vernon 2009). Accepting Glass's allegation as true, officers were provided with statements from the victims of the alleged assaults on each occasion, and Glass admits to having intentionally caused physical contact with the alleged victims. Given these facts, a reasonable fact-finder may conclude that the officers were "aware of facts justifying a reasonable belief that an offense [had been] committed." *Club Retro*, 568 F.3d at 204. Glass's allegations, therefore, may not support a claim that his Fourth Amendment right to be free from unreasonable seizure was violated.

On the other hand, "a police officer may be liable under § 1983 if he or she deliberately ignored exculpatory evidence or conducted a reckless investigation." *Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 580 (M.D. La. 2007) (citing *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992)). The Gainesville Police Department's repeated refusal to question readily available eyewitnesses may support a claim of reckless investigation. And while Glass has not sued the individual officers, if he can establish that such a practice by city officials was "so common and well settled as to constitute a custom that fairly represents municipal policy," then the city itself may face liability for the unconstitutional actions of its agents. *Deville*, 567 F.3d at 170. The City's Motion should be denied on this point.

2. *Fifth Amendment*

Glass also claims that his Fifth Amendment Due Process rights have been violated. "The

Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000); *accord Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 541 (E.D. Tex. 2004). Glass does not allege any federal involvement in this case. Accordingly, the City's Motion should be granted on this point.

    3.    *Fourteenth Amendment*

        a.    Due Process

Glass also alleges that his Fourteenth Amendment Due Process rights have been infringed. Specifically, Glass contends that his liberty interest in pursuing an occupation of his choice has been unduly infringed. The Fifth Circuit has recognized " protected liberty interest in pursuing an occupation of [one's] choice." *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 491-92 (5th Cir. 2005); *accord Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 347 (5th Cir. 2006). Glass has pleaded that the City's actions interfered with this interest. The City may infringe this interest only if it does so through a policy that is rationally related to a legitimate governmental interest . *See Brennan v. Stewart*, 834 F.2d 1248, 1256-57 (5th Cir. 1988). Taken as true, Glass's pleadings establish that the City's policy does not pass this test. The City's Motion should be denied on this point.

        b.    Equal Protection

The Equal Protection Clause of the Fourteenth Amendment serves "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). Essentially, similarly situated persons should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal protection claim may be

asserted by a "class of one" where it is alleged that the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. *See Vill. of Willowbrook*, 528 U.S. at 564.

The Complaint must be supported by factual allegations that Glass was "intentionally treated differently from others similarly situated" and "that there [was] no rational basis for the difference in treatment." *Whiting*, 451 F.3d at 348. "[D]isparate impact alone cannot suffice to state an Equal Protection violation; otherwise, *any* law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). The court finds that Glass has pleaded facts adequate to support an Equal Protection claim. The City's Motion should be denied on this point.

    *4.*    *Failure to Train*

Glass also presses a claim that the City failed to adequately train its police force in conducting investigations. At trial, Glass will need to show that the City "1) [] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). Most plaintiffs establish deliberate indifference by putting on evidence of a "pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id*. (internal quotation marks omitted). Glass's failure to train claim is adequately pleaded for the same reasons that his Fourth Amendment claim is. The police's continued inability to properly investigate complaints against Glass may support the failure to train claim. The City's Motion should be denied on this point.

B.     Intentional Infliction of Emotional Distress

Glass also pleads a claim for intentional infliction of emotional distress (IIED) under Texas law. In order to prevail, Glass will have to establish that "(1) [the City] acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its actions caused [him] emotional distress; and (4) the emotional distress was severe." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). Conduct is extreme and outrageous "only if it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (internal quotation marks omitted). Glass has pleaded facts that amount to a years-long campaign of harassment and intimidation by multiple organs of the City's government designed to disrupt Glass's livelihood, all in a manner that constituted a gross disregard of the responsibilities inherent in government service. The facts contained in Glass's Complaint would support a claim for IIED. The City's Motion should be denied on this point.

C.     Declaratory Judgment

Finally, Glass seeks a declaration from the court that the City's noise ordinance is arbitrary and capricious, thereby violating his First and Fourteenth Amendment rights. To proceed on a request for a declaratory judgment, a plaintiff must establish that an actual controversy between the parties existed at the time the complaint was filed. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). "The Supreme Court directs that the dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character." *Id*. Illegal conduct that is confined to the past will not support declaratory relief; rather, "a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

The City argues that Glass has not alleged facts that create an actual controversy between the parties for which declaratory relief would be available. On the contrary, Glass has pleaded that "Defendants [sic] have enforced *and continue to enforce* a city ordinance that is unconstitutional . . ." (Compl. at ¶ 144.) (emphasis added) Given the harassment detailed throughout the Complaint, the court sees little difficulty in concluding that Glass has adequately pled that he faces the "immediate threat of repeated injury in the future." *Bauer*, 341 F.3d at 358. The City's Motion should be denied on this point.

### IV. CONCLUSION

Based on the foregoing, the court is of the opinion that the City's Motion (de # 6) should be GRANTED IN PART and DENIED IN PART. Because Glass has not alleged unconstitutional behavior on the part of any federal actor, his Section 1983 claim may not rest upon the Due Process Clause of the Fifth Amendment. The court is, therefore, of the opinion that the Motion should be GRANTED insofar as it addresses that claim. The remainder of Glass's claims, however, are adequately pleaded such that his "claim to relief [] is plausible on its face." *Twombly*, 550 U.S. at 570. The court is, therefore of the opinion that the Motion should be DENIED insofar as it addresses the remainder of Glass's claims.

IT IS SO ORDERED.

**SIGNED this the 24th day of August, 2009.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE